## PAGENDARM v. HEYMANN.
### Patent Appeal No. 3148.

Court of Customs and Patent Appeals.

May 29, 1933.

Chas. E. Townsend and Wm. E. Loftus, both of San Francisco, Cal. (Harry F. Riley, of Washington, D. C., of counsel), for appellant.

George J. Henry, of San Francisco, Cal., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared by the United States Patent Office on August 31, 1929, between the application for patent of John F. Pagendarm, the appellant, and a patent issued to the appellee, Bruno Heymann, on April 24, 1928, on an application filed August 14, 1924. Pagendarm's application was filed in the Patent Office on April 15, 1929.

There are four counts in the interference proceedings, count 1 being illustrative and which is as follows: "1. In apparatus for generating an internal quadric surface, a tool and mechanism constructed and adapted to move said tool in a single plane and in adjustable elliptical paths, a table adapted to receive

raw material on which the tool is adapted to work, and means causing the table movement in a parabolic path at right angles to the plane of said ellipses."

The preliminary statement of Pagendarm alleges conception in April, 1923, disclosure to others in April, 1923, sketches in June and July, 1923, the construction of a machine embodying the invention in October, 1923, and a successful operation thereof in November, 1923. The appellee's preliminary statement alleges conception between May 15 and May 25, 1923, a descriptive drawing of the same on June 6, 1923, disclosure before June 15, 1923, and reduction to practice as follows: "The invention was thereafter reduced to practice during September and October of 1923, by the said John F. Pagendarm, following my disclosure to him, and for the order of William G. Wood, (the same party mentioned above) of the Berkeley Light Corporation, the predecessor of the American Woodlite Corporation."

The party Pagendarm caused testimony to be taken, and the party Heymann rested upon his application for date of conception and reduction to practice.

The Examiner of Interferences held that, Pagendarm's application being filed subsequent to the issue of Heymann's patent, the burden was upon Pagendarm of proving his case beyond a reasonable doubt. He further held that Pagendarm had not sustained the burden of proof in this respect, and that, therefore, priority must be awarded to Heymann.

The Board of Appeals invoked the same rule as to proof, and, after considering the record, sustained the decision of the Examiner of Interferences.

Both tribunals were of the opinion that the testimony in support of Pagendarm's claims was too indefinite to sustain his burden of proof. Pagendarm urged before both Patent Office tribunals that Heyman had no right to make the counts because his patent disclosed an inoperative construction for its intended purpose. However, it was held by the Board that, no motion having been made to dissolve the interference on said ground, and no testimony having been taken thereon, Pagendarm was not entitled to urge this ground of attack, under rule 130 of said office.

In this court, the appellant has waived the question of inoperativeness and relies largely upon the contention that he was the original inventor of the device in question, and that whatever information Heymann had about the subject, and upon which he based his application for patent, was communicated to Heymann by Pagendarm. The further contention is made that the parties hereto were fellow workmen, both employed by the Berkeley Light Corporation, predecessor of American Woodlite Corporation, and that the party Heymann had no part in the conception of the invention herein except to furnish the party Pagendarm with information of a mathematical nature, all under the direction of Mr. William G. Wood, of the Berkeley Light Corporation.

The Board of Appeals applied the proper rule as to the burden of proof. White v. Syvertsen, 46 F.(2d) 364, 18 C. C. P. A. 897.

The only question then is whether, upon the record now before us, the Board of Appeals was in error in finding that Pagendarm had not sustained this burden.

The record shows, in substance, that Pagendarm was a mechanical engineer and developer of machines, and maintained a small shop in San Francisco, Cal., at the time of the occurrence of the events hereinafter mentioned. For a considerable time before and after these particular events, Pagendarm had been doing construction and development work for the Berkeley Light Corporation, afterward the American Woodlite Corporation.

Some time in April, 1923, William G. Wood, of the Berkeley Light Corporation, had a conception of a reflector for headlights of automobiles, and on April 13th of that year called on Pagendarm, showed him some drawings of this reflector, and asked him if he could build the necessary machine for making punches and dies to produce these reflectors in a commercial way. The particular type of reflector which was to be made is one which the witnesses allude to as having a quadric surface, in which the surface was to be elliptical in plan and parabolic through the vertical median plane.

At the time Wood talked with Pagendarm, on this occasion, he had a rough sketch of the reflector, and the party Heymann was with him. These three men discussed the matter together, Pagendarm insisting that he had a plan to make a machine which would produce punches and dies for such reflectors, while Heymann disagreed with him as to his conception. Heymann, at that time, according to the witness Wood, was engaged in drafting, and had been employed, to a considerable extent, in drafting for old type headlamps, and was skilled in making the necessary mathematical computations for reflectors, lamps, or machines. Pagendarm claims

that he made a sketch of his design for a machine, and a wooden model, within a few days after the call of Wood. This sketch and the model, however, were not produced, and were said to have been destroyed or lost. He did produce, however, a sketch which he had made shortly before the hearing in 1930, which he claimed to be a sketch of the wooden model. Pagendarm testified that he made castings of the machine in August and September, 1923, and that he built the machine in December, and tested it. He further states that in the early part of January or February, 1924, he built a plaster cast to hold a metal form of reflector so that it could be machined; that, thereafter, he made a brass punch to make these reflectors. In connection with this testimony, Pagendarm stated that the original machine was still in his shop at 71 Perry street, San Francisco, in the same city where the testimony was then being taken, but it nowhere appears that he offered to produce this machine. At no time, in the proceedings before the Patent Office, was any opportunity given to the tribunals of that office to see this machine, which, it is claimed, embodied the invention in question, although it is quite apparent that no better evidence could be had of its characteristics and operativeness than the machine itself. A photograph was offered of the machine, as it stood in Pagendarm's shop, but it is impossible, from an inspection of the same, to ascertain whether it would, or would not, operate in the way claimed for it.

There is also a conflict in the testimony, it being claimed by Pagendarm that the machine embodied all the inventive features of his application here involved, while, on the other hand, it was stated by one of the witnesses that it did not do so, particularly as to the tilting table device.

One thing is quite apparent, from the testimony, as to this machine—that it has been kept by Pagendarm and by the American Woodlite Corporation in concealment, it being stated that it was the policy of the Woodlite Corporation, the assignee of this appellant, to keep the knowledge of such machine away from the public. It was therefore secluded in Pagendarm's shop, and only a very few selected persons were permitted to see it.

It is stated by the witness Wolpman that after the removal to the new shop in January, 1924, this machine did not operate in a satisfactory manner, and that adjustments had to be made thereafter. It also appears that a cam was made by Pagendarm to operate a part of the machine, but that this cam did not produce the effect that was desired. The party Heymann was asked to prepare some templates, which he did, and by means of which Pagendarm was enabled to lay out cams which did produce the desired effect.

It is quite apparent, from the testimony in the record, that Pagendarm did build a first machine, but that it did not produce the desired effect; that the work was rough, not correct as to its curvature, and that Heymann was called upon from time to time to furnish information by which the operation of the cams of the machine was to be determined, and to supply the necessary information by which the proper curvature of the finished dies could be cut or formed. It is quite obvious that, although Pagendarm had a general idea of what was required to be done, he was not able to do it until Heymann gave him the necessary information by which it might be done.

The machine was complicated, and required mathematical accuracy. The curvature of the reflector to be made by this machine was required to be accurate. From the showing that is made, it is not at all certain that Pagendarm had the requisite information and knowledge by which he could solve the problem.

Even if it might be said that Pagendarm had a general idea of the device, after reading this record, the mind is not left in the condition where it can be said beyond a reasonable doubt that Pagendarm had conceived and reduced to practice the invention at issue here. Having waited for approximately one year after Heymann obtained his patent, and six years after the time at which he says he conceived the invention at issue, before applying for a patent, Pagendarm certainly should be required to make the most exact proof before priority should be awarded to him herein. This proof, we agree with the Board of Appeals, he has not made.

It seems, from the record, that Pagendarm made a second machine, which was doubtless made because of the defects in the first machine, and which second machine, according to the witness Wolpman, was probably constructed, beginning the latter part of 1924 or the early part of 1925, but, so far as the record discloses, was evidently begun after Heymann had filed his application for patent. This fact induces the belief that the first machine prepared by Pagendarm, and upon which he relies for a reduction to practice, was not satisfactory and did not produce the desired results.

It may also account for the fact that

said machine was not produced so that the Patent Office tribunals might have an opportunity, by inspection thereof, to ascertain whether the counts of the interference would read thereon.

It is claimed by appellant that appellee is in no position to deny that appellant reduced his invention to practice in September or October of 1923, because of the statement in appellee's preliminary statement hereinbefore quoted; that this is an admission by appellant against interest, by which he should be bound. However, such statement was made by appellee in connection with the further claim that the invention thus reduced to practice was appellee's invention, which had been disclosed before that time by appellee to appellant. Having found that Heymann disclosed the subject-matter to appellant, the statement, if taken as binding, would inure to the benefit of appellee, and must be read in that way. In this view of the matter, appellee, having offered no evidence, is entitled to the date of his filing for his constructive reduction to practice, irrespective of the date alleged in such preliminary statement. Nolop v. Smith, 36 F.(2d) 838, 17 C. C. P. A. 768.

In our opinion the decision of the Board of Appeals should be, and it is, affirmed.

Affirmed.